JOHN RHODES
Assistant Federal Defender
Federal Defenders of Montana
Missoula Branch Office
P.O. Box 9380
Missoula, MT 59807
Phone: (406) 721-6749

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RALPH LEON FOX,<br><br>Defendant. | Case Number CR-07-47-M-DWM<br><br>**SENTENCING MEMORANDUM** |

## I.  INTRODUCTION

Mr. Fox has been charged by Indictment in three substantive counts and a forfeiture

count.  The first count charges Sexual Exploitation of Children, a violation of 18 U.S.C. §

2251(a).  Count I carries a mandatory life sentence.  Counts II and III, respectively, charge

Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2), and Possession of Child

Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  Counts II and III carry mandatory

minimum sentences of 15-40 years and 10-20 years, respectively.   The United States Probation

Officer has calculated a Guideline range of 360 months to life (Total Offense Level 42; Criminal

1

History Category V).

Mr. Fox agrees with the PSR Guidelines calculations.  He factually objects to the victim impact statements in the PSR.  Mr. Fox requests a sentence below the mandatory life sentence.

## II. ARGUMENT

A        Objections to Factual Assertions in the PSR

The italicized text reflects the probation officer's response to Mr. Fox's objections.

**Paragraph 11:**        Mr. Fox objects to the inclusion of the victim impact statement written by the victim's parent in the PSR.

The letter attached to the PSR is from a family member of the child victim.  The Child Victim's and Child Witness's Rights Act, 18 U.S.C. § 3509(f) provides:

> (f) Victim impact statement.--In preparing the presentence report pursuant to rule 32(c) of the Federal Rules of Criminal Procedure, the probation officer shall request information from the multidisciplinary child abuse team and other appropriate sources to determine the impact of the offense on the child victim and any other children who may have been affected. A guardian ad litem appointed under subsection (h) shall make every effort to obtain and report information that accurately expresses the child's and the family's views concerning the child's victimization. A guardian ad litem shall use forms that permit the child to express the child's views concerning the personal consequences of the child's victimization, at a level and in a form of communication commensurate with the child's age and ability.

Other than the child themself, a specially appointed guardian ad litem is the only other person who should be permitted to express the views of the child regarding the crime at issue.

Federal Rule of Criminal Procedure 32(c), referenced in the above statute, does not mandate that the PSR include statements from parents.  Fed.R.Crim.P. 32(i)(4)(B) explains that before sentencing, victims may have the opportunity to speak.  The Rule states:

> (B) By a Victim. Before imposing sentence, the court must address any victim of a crime of violence or sexual abuse who is present at sentencing and must permit

2

the victim to speak or submit any information about the sentence. Whether or not
the victim is present, a victim's right to address the court may be exercised by the
following persons if present:

> (i) a parent or legal guardian, if the victim is younger than 18 years or is
> incompetent; or
> (ii) one or more family members or relatives the court designates, if the
> victim is deceased or incapacitated.

Rule 32 discusses the right of the victim, if present at a sentencing hearing, to speak or

submit information and for a parent to do so if the victim is a minor.  It does not mandate that

any parent, who is not present at a sentencing hearing, may write a letter and that the letter must

be attached to the PSR.  Rather, if the victim or the parent of a minor victim were present in the

courtroom, that person would have the right to make a statement.  Thus, Mr. Fox objects to the

inclusion of the letter from the parent, rather than a guardian ad litem, in the PSR.

*"These are compelling arguments and the Court is in the best position to decide for this*

*case and pending cases, whether such letters should be included.  The Victim Impact section of*

*the PSR addresses Federal Rule of Criminal Procedure 32(d)(20(B) which requires, "verified*

*information, stated in a nonargumentative style, that assesses the financial, social,*

*psychological, and medical impact on any individual against whom the offense has been*

*committed."  Though this letter is written by the victim's mother, not a professional like a*

*physician or psychologist, the language might allow for inclusion of such a statement."*

**Paragraph 17:**   The description in paragraph 17 of HS's reported statement was
never placed in any police report given to the defendant through
discovery.  Specifically, nothing in the discovery stated that the
defendant "put his "thingie" in her private . . .  that he made her
suck on his "thingie". . . white/clear stuff came out of his private so
she would drink water or juice afterward."  Paragraphs 53 and 57
of the PSR summarize the statements made in the police reports
given to Mr. Fox through discovery.  Given that these reports were
taken far closer in time to the events in question, they are the more

reliable source of information.

"*Defense counsel is correct that the details noted were not initially provided by the victim in this case.  They were obtained when counsel interviewed the victim prior to the trial, in order to excuse her from having to testify.  The Court should perhaps weigh more heavily her initial statements rather than a statement provided months after the crime.*"

> **Paragraph 45:**      Mr. Fox objects to the extensive narrative contained in paragraph
> 45 which contains not only the prior conviction, but also a review
> of the prosecution and detail of prison incidents.  The information
> is beyond the scope of the information required by Rule 32 and is
> irrelevant and prejudicial to Mr. Fox.  His Guidelines are
> calculated based on the offense of conviction and not on his
> behavior while in prison.  Similarly, his sentence should be based
> on the facts of the case, not on decades-old prison reports**.**

*Rule 32 does govern the information provided in the PSR.  Additional guidance is provided to*

*the probation office by THE PRESENTENCE INVESTIGATION REPORT, Publication 107*

*which reads,*

> *each entry, in chronological order, lists the date of arrest, the charge of*
> *conviction and court, the date sentence was imposed, the disposition, and the*
> *applicable guidelines and guideline points awarded.  If the defendant was not*
> *arrested, the offense date is used as the arrest date to ensure a chronological*
> *recitation of the defendant's criminal behavior.  Following each entry, a*
> *paragraph provides details about the conviction, reporting if the defendant was*
> *represented or waived counsel and describing the circumstances surrounding the*
> *serious violations.  If the defendant was imprisoned, the adjustment while*
> *incarcerated is discussed, including the date of release.  If the disposition*
> *included a term of supervision, the defendant's performance is described.  If a*
> *term of supervision was revoked, the disposition of the revocation and subsequent*
> *dates of imprisonment are reported with the original entry.*

*This is a very lengthy narrative, 2½ pages.  The information was obtained from court records,*

*law enforcement reports and prison documents.  Though defendant may dispute some parts, this*

*is the only information available regarding this serious criminal offense, Lewd and Lascivious*

*Act Upon a Child Under Age 14.  The information in the noted paragraph covers 10 years in this*

4

*defendant's life and does inform the Court of not only the prior conviction, but underlying issues*

*with this defendant.*

The above factual objections need not be ruled upon unless they will affect the outcome of

sentencing.  FED.R.CRIM.P. 32(I)(3)(B).

B.      No Dispute With Calculation of Guideline Sentencing Range

        Mr. Fox agrees with the PSR Guidelines calculations.

C.      Downward Departure

        None.

D.      18 U.S.C. § 3553(a) Sentencing Factors

        1.      Overview of sentencing law.

        *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007), re-affirmed that *United States v.*

*Booker* established an independent limit on the sentence that may be imposed.  See also *United*

*States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).  The primary sentencing mandate of

18 U.S.C. § 3553(a) states that courts must impose the minimally-sufficient sentence to achieve

the statutory purposes of punishment - justice, deterrence, incapacitation, and rehabilitation:

        The court shall impose a sentence *sufficient, but not greater than necessary*, to
        comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)].

*Kimbrough*, 128 S.Ct. at 570; 18 U.S.C. § 3553(a) (emphasis added); *Carty*, 520 F.3d at 991.

This so-called "parsimony provision" is "an overarching provision,"  representing a cap above

which the Court is statutorily prohibited from sentencing – even when a greater sentence is

recommended by the Sentencing Guidelines, which, per § 3553(a), are statutorily subordinate to

the parsimony principle.  See *id.*; United States v. Foreman, 436 F.3d 638, 644 n.1 (6th Cir.

5

2006); *United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part).

After calculating the proper Guidelines sentence as the "initial benchmark," the Court must then consider each of the § 3553(a) factors to impose a sentence sufficient, but not greater than necessary, to fulfill the purposes of sentencing. *Gall v. United States*, 128 S.Ct. 586, 596-97 (2007); *Carty*, 520 F.3d at 991. The Supreme Court explained, and the Ninth Circuit adopted the rule, that a district court may not presume the Guidelines range to be reasonable. *Gall*, 128 S.Ct. at 596; *Carty*, 520 F.3d at 991. The Guidelines are to be given no greater weight than any other § 3553(a) factor. *Gall*, 128 S.Ct. at 594, 596-97, 602; *Carty*, 520 F.3d at 991. Thus, the Supreme Court rejected an appellate rule requiring extraordinary circumstances or the use of a mathematical formula to justify a sentence outside the Guidelines range. *Gall*, 128 S.Ct. at 595. Instead, appellate courts will apply the abuse of discretion standard of review to all sentencing appeals whether the Court imposed a sentence within or outside of the Guidelines. *Id*. at 596. *Carty*, 520 F.3d at 993. In order to facilitate this review, the district court "must adequately explain the chosen sentence . . . to promote the perception of fair sentencing." *Id*. at 597; *Carty*, 520 F.3d at 992. The justification must be "sufficiently compelling to support the degree of the variance." *Id*. at 598.

The Court is afforded this discretion because it "is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *Id*. at; *Carty*, 520 F.3d at 992. "[W]hen a party raises a specific, nonfrivolous argument tethered to a relevant § 3553(a) factor in support of a requested sentence, then the

6

judge should normally explain why he accepts or rejects the party's position." *Rita*, 127 S.Ct. at 2468; *Carty*, 520 F.3d at 993.

      2.   <u>The mandatory sentences being applied to Mr. Fox conflict with the mandate to sentence on an individual basis and to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).</u>

Individualized sentencing under 18 U.S.C. §3553(a) is now mandatory after *Booker v. United States*, 543 U.S. 220 (2005) and *Gall v. United States*, 128 S. Ct. 586 (2007). The mandatory nature of 18 U.S.C. §3553(a) requires a new look at the interaction between that provision and offenses carrying a mandatory minimum sentence such as 18 U.S.C. § 2251(a). If a minimum sentence under 18 U.S.C. § 2251(a) conflicts with the mandatory sentencing factors of 18 U.S.C. §3553(a), the former must yield to the latter. This statutory construction is supported by the language and structure of the statutes and the rule of lenity. The Ninth Circuit has previously held that mandatory minimum sentences are constitutional. *United States v. Wilkins*, 911 F.2d 337, 339 (9th Cir. 1990). It has also recognized that *Booker* did not involve mandatory minimum sentences. *United States v. Mueller*, 463 F.3d 887, 892 (9th Cir. 2006); *Cardenas*, 405 F.3d 1046, 1048 (9th Cir. 2005). The Court has thus concluded that *Booker* did not render mandatory minimum sentences advisory or unconstitutional. *Id*.; *United States v. Dare*, 425 F.3d 634, 641 (9th Cir. 2005).

The Ninth Circuit, however, has not considered whether the district court has the statutory authority to tailor a sentence to less than an assumed "mandatory minimum" sentence established by 18 U.S.C. § 2251(a) if it determines in a particular case that such a sentence conflicts with the goals of §3553(a) Because the former 18 U.S.C. §3553(b) made compliance with the Sentencing Guidelines mandatory, courts became accustomed to accepting the mandatory minimum as a

floor beneath which they could not go absent specific statutory directives, such as those found in 18 U.S.C. §3553(e) and (f).

Under *Gall*, the Supreme Court held that a district court must tailor a sentence to meet the parsimony provision of 18 U.S.C. §3553(a).  Established principles of statutory construction lead to the conclusion that a minimum sentence specified in 18 U.S.C. § 2251(a) is not in fact "mandatory" if such a sentence conflicts with the equally mandatory parsimony provision of 18 U.S.C. §3553(a).

The analysis begins with the language of the statute or statutes at issue. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). Courts are to accord the statutory text its ordinary meaning by reference to the specific context in which that language is used, and the broader context of the statute as a whole.  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). If the statutory language provides a clear answer, the inquiry ends. *Hughes*, 525 U.S. at 438. In this case, an examination of the statutes' language and structure provides this clear answer.

        a.       The language and structure of the statutes.

18 U.S.C. §3551 states that "except as otherwise specifically provided," a defendant must be sentenced to a term of prison as set out in Title 18 in a manner that meets the objectives of § 3553(a)(2). Nothing "specifically provides" that an individualized sentence under 18 U.S.C. § 3553(a) is inapplicable to sex offenses under 18 U.S.C. § 2251(a). There is no reference to Title 18 in the section setting out minimum prison terms - either to indicate an intent to sentence consistently with Title 18 or an intent to trump any conflicting provisions in it.  Similarly, 18 U.S.C. § 3559(e) mandates life imprisonment for repeated sex offenses against children. However that statute also does not specifically address those issues.  This lack of language

contrasts with, for example, 18 U.S.C. § 3559(c), which discusses imprisonment for certain violent felonies.  That section prefaces the terms by stating "notwithstanding any other provision of law."  18 U.S.C. § 3559(c)(1).  It "specifically provides" that it trumps other statutes that may apply.

Under rules of statutory construction, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Gozlon-Peretz v. United States*, 498 U.S. 395, 404 (1991); accord *United States v. Levya*, 282 F.3d 623, 625 (9th Cir. 2002). Given the absence of such override language, the minimum sentence of 18 U.S.C. § 3559(c) or § 2251(a) cannot be interpreted to fall within the clause "except as otherwise specifically provided" of 18 U.S.C. §3551.

Importantly, there is no language in 18 U.S.C. §3553(a) specifically requiring district courts to give superseding weight to "mandatory" minimum sentences. To the contrary, §3553(a) merely requires the district court to consider "available" sentences. 18 U.S.C. §3553(a)(3). The sentence under § 2251(a) and 18 U.S.C. § 3559(e) are such available sentences, but they are by no means the only available sentences. See 18 U.S.C. §3581 (authorized prison terms for all federal crimes). As the Supreme Court teaches in *Booker*, *Gall* and *Kimbrough*, when §3553(a) mandates that the district court consider the available sentences, it does not mean that the district court must impose any one particular sentence.  The mandatory parsimony provision of 18 U.S.C. §3553(a) conflicts with mandatory minimum sentences.

Both 18 U.S.C. § 3553(e) and 18 U.S.C. § 3553(f) mandate reduced sentences under specific circumstances; neither indicate that there are no other discretionary methods for reducing

such a sentence. Indeed, under Fed. R. Crim. P. 35(b), a district court may reduce a defendant's sentence below a statutory minimum after initial sentencing if that defendant provides substantial assistance to the government in the prosecution of others. The resulting sentence may be reduced "to a level below the minimum sentence established by statute." Because the statutes here do not specifically provide that they override 18 U.S.C. §3551 and §3553(a), the language of these statutory provisions lead to the conclusion that the latter trump the former.

      b.    <u>The rule of lenity</u>.

The rule of lenity requires the sentencing court to impose the lesser of two penalties where there is an actual ambiguity over which penalty should apply. See, e.g., *Bifulco v. United States*, 447 U.S. 381, 387 (1980); *United States v. Bass*, 404 U.S. 336, 347 (1971). The core legal question is whether anything in § 2251(a) and 18 U.S.C. § 3559(e) renders 18 U.S.C. §3553(a) inapplicable. Proper statutory analysis and interpretation show that the answer to that question is no. If there is any question, however, the rule of lenity requires that the district court be given the opportunity to impose a sentence which was "sufficient, but not greater than necessary" to fulfill the sentencing objectives of 18 U.S.C. §3553(a)(2). Thus, under the rule of lenity, Mr. Fox should receive a sentence below the "mandatory" sentence.

      c.    <u>A lifetime sentence violates the Eighth Amendment</u>.

Finally, Mr. Fox contends that to impose a life sentence without considering18 U.S.C. § 3553(a) violates the Eighth Amendment prohibition against cruel and unusual punishment. The Eighth Amendment of the Constitution of the United States forbids extreme sentences that are grossly disproportionate to the crime. *Ewing v. California*, 538 U.S. 11, 20 (2003)*; Solem v. Helm*, 463 U.S. 277 (1983). In weighing the gravity of the offense and the relative harshness of

10

the penalty, courts should consider the offense of conviction and the defendant's criminal history, *Ewing*, 538 U.S. at 29, as well as the harm caused to the victims or to society and the culpability of the offender.  *Solem*, 463 U.S. at 292-294.  This culpability analysis should include the degree of requisite intent and the offender's motive in committing the crime. *Id*.

Courts have struggled with application of the Eighth Amendment.  What has emerged is a narrow rule for evaluating proportionality between a specific crime and punishment.  The Supreme Court established this rule by the concurrent opinion in *Harmelin v. Michigan*, 501 U.S. 957 (1991), a case without a majority and later affirmed by the plurality opinion in *Ewing,* 538 U.S. 11.  This proportionality evaluation procedure underpins the principle that the Eighth Amendment does not require strict proportionality between the crime and the sentence.  It does, however, forbid extreme sentences that are grossly disproportionate to the crime. *Id*.

The narrow proportionality rule of *Harmelin* requires that when evaluating Eighth Amendment proportionality challenges three criteria are involved.  The first is the gravity of the offense in relation to the harshness of the penalty.  The second is whether more serious crimes are subject to the same penalty or less serious penalties in the same jurisdiction.  The third is the sentences imposed for the same crime in other jurisdictions. *Solem*, 103 S.Ct. at 3010, 3011.

The first proportionality factor (gravity of offense vs. penalty harshness) acts as a gateway or threshold.  If an assessment of this factor fails to show a gross imbalance between the crime committed and the sentence imposed, the analysis comes to an end with no obligation to conduct any comparative analyses within and between jurisdictions.  Consequently the sentence will be not be judged to be a constitutional violation.  A court must initially focus, therefore, on whether the defendant's sentence is a case in which the threshold comparison of the crime committed and

11

the sentence imposed reflects a significant imbalance.  *Ewing*, 538 U.S. at 30 (quoting *Harmelin*, 501 U.S. at 1005 (Kennedy, J.)).  The Ninth Circuit adheres to this procedure.  In *United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir. 1998) the Court, relying upon *Harmelin*, stated that "comparative analyses of sentences for other crimes is only appropriate in the rare cases where the threshold comparison indicates the crime committed and the sentence imposed are grossly disproportionate."

        In the context of the argument in this case, the line between the factors becomes blurred. It boils down to a the same crime being punished in two very different ways. On the one hand, there is the punishment of life. On the other hand, under 18 U.S.C. § 3553(a) punishment is determined using several factors, including the sentencing guidelines, in order to take into consideration the VERY SAME factors in terms of the offense of conviction and prior offenses. However, the result is vastly different. Thus, depending on what statute is used, a defendant may be subject to life imprisonment or a Guidelines sentence of 30 years or even less. This discrepancy flies in the face of factors two and three. Accord *United States v. Gallegos*, 129 F.3d 1140, 1143 (10th Cir.1997) (stating that the purpose of the Guidelines is to eliminate unwarranted disparities in sentencing nationwide).

        In order to avoid the conflict between the two statutes and to avoid the constitutional dilemma, the solution is to sentence Mr. Fox under 18 U.S.C. § 3553(a). Accordingly, Mr. Fox requests a sentence no greater than necessary to adhere to the purposes of sentencing, which is a sentence less than life.

      d.     <u>Application of the § 3553(a) factors to Mr. Fox</u>.

Considering the 3553(a) factors, the Court should use its discretion after *Booker* and *Rita* to consider Mr. Fox's history of mental illness. Mental health is an encouraged factor for a court to consider in sentencing because it promotes the policy of lenity toward defendants whose ability to make reasoned decisions is impaired. *United States v. Cantu*, 12 F.3d 1506, 1512 (9th Cir.1993). As such, a district court may depart downward to "reflect the extent to which the reduced mental capacity contributed to the commission of the offense." U.S.S.G. § 5K2.13. The Ninth Circuit explained that the courts should "find some degree, not a particular degree, of causation" between the defendant's mental condition and the commission of the offense in question. *Cantu*, 12 F.3d at 1515. Here, Mr. Fox's personal characteristics and history of mental illness are central to the offenses.

Mr. Fox reported that he was beaten daily as a child by his father, who also abused his mother.[1] (PSR ¶ 58.) He was sent from home to the McClaren School for Boys in Woodburn, Oregon at the age of 14. (PSR ¶ 58.) From there, his family sent him to work at camp Tillamook, where he stayed until the age of 17 (once running away). (PSR ¶ 58.)

At this time, Mr. Fox is prescribed Geodone, an anti-psychotic medication given for his diagnoses of schizo-affective disorder. (PSR ¶ 72.), *See also* Medical Records and Social Security Disability Records in Exhibit A and B, filed separately. The PSR describes a schizo-

---

[1] The risk of depression in people who were abused or neglected as children, researchers found that overall, childhood physical abuse increased the lifetime risk for depression and that previously abused individuals were more likely to meet the diagnostic criteria for at least one other mental disorder, such as post-traumatic stress disorder, drug dependence, or antisocial personality disorder. C. Spatz Windom, K. Dumont & S.J. Czaja, *A Prospective Investigation of major Depressive Disorder and Comorbidity in Abused and Neglected Children Grown Up*, 64(1) Arch. Gen. Psych. 49-56 (2007).

affective disorder as a combination of a mood-disorder and schizophrenia, which may cause impairments in perception and expression of reality. (PSR ¶ 72.) Anti-psychotics are recommended, along with psychotherapy and vocational and social rehabilitation. (PSR ¶ 72.)

Mr. Fox had previously been prescribed anti-depressants, Prozac, Bhuspar and Wellbutrin. (PSR ¶ 74.)  Records show that Mr. Fox had been prescribed such drugs in the 1970's while incarcerated.  (PSR ¶ 74.) Depression in men typically manifests itself as discouragement, frustration, irritability, anger and sometimes, as violence, and is often masked as alcohol or drug abuse.[2]  Some men respond to depression by engaging in reckless behavior, taking risks and putting themselves in harm's way.[3]

The PSR discusses records from Dr. Edward Trontel, a psychologist, who conducted a mental status examination at the request of the Disability Determination Board on June 17, 2002. (PSR ¶ 75.)  The examination concluded with diagnoses of Post-Traumatic Stress Disorder, Pedophilia and Borderline Personality Disorder (with marked anti-social features). (PSR ¶ 78.) His symptoms included profound anxiety, hypervigilance, avoidance of reminders of mistreatment and preoccupation with his experiences.  (PSR ¶ 78.) The report discussed Mr. Fox's severe mistreatment as a child.  (PSR ¶ 76.)  It linked his disassociation to "terrifying beatings and sexual assault" he suffered as a child.  (PSR ¶ 78.)

Mr. Fox's severe mistreatment as a child and the associated mental health issues that have plagued him throughout his life should be reflected in his sentence- a sentence of something less than the remainder of his life.

_____

[2] National Institute of Mental Health, *Men and Depression*, Pub. No. 05-4972, 8 (2005).

[3] *Id.*

14

E.    <u>Restitution</u>

None.

F.    <u>Witnesses</u>

Mr. Fox does not expects to call any witnesses.

## III. <u>CONCLUSION</u>

For the above reasons, a sentence below that mandatory lifetime sentence would reflect the sentencing mandate of 18 U.S.C. § 3553(a), that the Court "impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)]." *Kimbrough*, 128 S.Ct. at 570; 18 U.S.C. § 3553(a) (emphasis added).  Regardless of the sentence imposed, Mr. Fox requests that the Court recommend placement at a Federal Medical Center, so as to address his mental health issues.

RESPECTFULLY SUBMITTED July 15, 2008.


RALPH LEON FOX

By: <u>*/s/ John Rhodes*</u>
JOHN RHODES
Federal Defenders of Montana
Counsel for Defendant

15

**CERTIFICATE OF SERVICE**
**L.R. 5.2(b)**

I hereby certify that on July 15, 2008, a copy of the foregoing document was served on

the following persons by the following means:

 1, 2 \_\_\_\_          CM-ECF


\_\_\_\_      Hand Delivery

\_\_\_\_     Mail

\_\_\_\_     Overnight Delivery Service

\_\_\_\_     Fax

\_\_\_\_     E-Mail

1.     CLERK, UNITED STATES DISTRICT COURT

2.     MARCIA HURD
       Assistant United States Attorney
       United States Attorney's Office
       P.O. Box 1478
       Billings, MT 59103
              Counsel for the United States of America


                              By:   */s/ John Rhodes*_____
                                    JOHN RHODES
                                    Federal Defenders of Montana
                                    Counsel for Defendant

16